[Civ. No. 3576.   Fourth Dist.   Feb. 24, 1948.]

FLOYD J. HARKNESS et al., Respondents, v. B. E. MONTGOMERY, Appellant.

David E. Peckinpah and L. N. Barber for Appellant.

W. M. Conley, Philip Conley, Mathew Conley, Conley, Conley & Conley and L. Kenneth Say for Respondents.

BARNARD, P. J.—This is an action for damages for breach of an agreement to furnish irrigation water.

The defendant owned a ranch of over 5,000 acres in the Mendota district. The plaintiffs had a large number of grape-vine cuttings and were looking for land on which to plant these and raise rootings. On January 3, 1945, the defendant leased 30 acres of this land for one year to the plaintiffs for this purpose, at a rental of $2,000 paid in advance. By a written agreement, reciting this purpose, the defendant agreed to furnish water for irrigation ''in ample amounts and at times when our Mr. Stafford deems it necessary for the irrigation to keep said nursery stock growing properly.'' Stafford, who was in charge for the plaintiffs, was a nursery-man of long experience, and in addition to his salary he was to receive one-third of the net proceeds from the project. Before the contract was signed the defendant showed the plaintiffs two pumping plants, indicating that they would be the source of the water, but did not tell them that he had previously leased 500 acres of the adjoining land to the Friedman Company, with the exclusive right to the use of the two pumps. The defendant was told that the plaintiffs planned to preirrigate the land and agreed to provide water for that purpose.

There is no controversy with respect to 5 acres of the leased land. On the other 25 acres the plaintiffs planted 873,800 cuttings. Planting was begun on April 11 and finished on April 22. They were planted on soil which was very dry and the first water for irrigation of the 25 acres was received on April 19, through the courtesy of the Friedman Company. Practically all of the cuttings died and it is admitted that this was caused by the lack of water at the proper times.

The complaint alleged a failure to furnish water as agreed and the answer admitted an agreement to furnish water in ample amounts to keep said nursery stock growing properly, and further admitted that at various times the plaintiffs had demanded that the defendant furnish them water and, in particular, that such a demand had been made in writing on April 9, 1945. The court found in all respects in favor of the plaintiffs and entered judgment for $9,775.63, from which the defendant has appealed.

It is first contended that the evidence is not sufficient to support the finding that there was a breach of the cove-

nant to furnish water. It appears, without dispute, that the cuttings which were planted were good healthy cuttings which had been properly "healed in" and had made a good healthy growth. The appellant admits in his brief "There can be no doubt that the rootings died from lack of water, but the only logical explanation of the undisputed facts is that they were dead when the water was applied. The irrigation was delayed too long after the planting." It is argued that the appellant was under no obligation to furnish water except when it was demanded; that there is no evidence that he refused any such demands; that the respondents knew that the water must come from the Friedman Company, who had a lease on the pumps; that no demand which was made on the Friedman Company was refused; and that considerable water was furnished which would have been sufficient if taken and used at the proper times. He relies largely on the testimony of a foreman for the Friedman Company, who testified that the land of the 25 acres was very dry when the cuttings were planted; that Stafford asked him for water after most of the cuttings had been planted; that he first let Stafford take water for the 25 acres on April 19, and as soon as it was requested; that Stafford was told to take what he wanted; that Stafford took some water and on April 25, he gave him all the water for three days; and that he then told Stafford to take all the water he wanted.

On the other hand, there is evidence of the following facts. On January 3, Stafford told the appellant that he wanted water for the ground prior to the middle of March because they wanted the cuttings planted by April 1. The appellant said he would furnish such water. Stafford again requested water from the appellant about the first of March, the latter part of March, and several times in the early part of April. While he had desired to plant the cuttings earlier, he finally started on April 11 because they would be useless if he waited longer. No water was furnished in time to preirrigate the land. In many conversations the appellant told Stafford that the water would be there in a few days. He asked the appellant for water many times. Stafford reported to the respondents nearly every night that the appellant would not give him water, but kept promising to do so. On April 9, the respondents wrote a letter to the appellant telling him that Stafford advised them that he was unable to get the necessary water to proceed with the nursery deal,

reminding him of their heavy investment and of his agreement to furnish the water, telling him that any loss would be chargeable to him, and requesting him to make the necessary arrangements without further delay. The appellant testified that he received this letter on April 10 and that, ''I just laughed about it.'' The appellant promised to dig a ditch to bring water to the land but did not do so until April 17. While some water was furnished after that there is evidence that it was not furnished in sufficient quantity even then. However, the evidence fully justifies the inference that the damage had been done before that time.

The first water was received through the courtesy of the Friedman Company on April 19, and then in limited quantity. While admitting that even this was too late, the appellant argues that there is evidence that the respondents did not ask the Friedman Company for water at an earlier date. Their contract was not with the Friedman Company. There is evidence that the Friedman Company had been using all of the water from the two pumps and was trying to buy more water from another source owned by the appellant, and the respondents properly addressed their demands to the appellant, whose duty it was to furnish the water. In any event, nothing more than a conflict appears and there is ample evidence to support the court's findings to the effect that timely demands for water, including one in writing, were made; that these were not complied with; and that the damage resulted from the appellant's failure to comply with his agreement.

The only other point raised is that the damage was entirely due to neglect on the part of the respondents. It is argued that the respondents waited until the appellant ploughed a ditch on April 17; that the contract did not require the appellant to plough this ditch; that there is no evidence to show that the respondent could not have ploughed the ditch himself if he thought appellant's delay was endangering the rootings; and that it was the respondent's duty to minimize the damage. At best, these arguments rest upon a conflict in the evidence. The appellant had agreed to furnish water for this land. While the written contract did not state that the water would be brought to the land that is a reasonable inference from its terms, and the parties so interpreted it. Stafford asked the appellant to dig the ditch in March, and he promised to do so. There is evidence

